You may proceed. Thank you, Your Honor. May it please the Court. My name is Anne Carter and I represent the appellant Alfredo Ochoa. We are asking the Court to vacate the revocation judgment and remand this case for a new revocation hearing and a new sentencing. I want to start by discussing the calculation of the guideline range in this case. We are asking the Court to adopt a categorical approach to determine whether a violation is a Grade A violation or if it is a Grade B violation. This is a circuit split. The First, Fourth and Ninth Circuits have adopted the categorical approach in this context. The Third and the Seventh have rejected it. What do you do with our Schwab case? Did our Schwab case, by using the term actual conduct and not the offense, are we — have we already picked a side in 1996? Are you familiar with the Schwab case? Yes, Your Honor. Okay. So tell me about it. I do not think that this Court decided the issue in Schwab. So Schwab and also the later Ceballos-Santacruz case both addressed the same issue, which was how do we tell the difference between a B violation and a C violation? Each case, the defendant pled guilty to a misdemeanor. But the Court found at the revocation case that his conduct was severe enough it could have been a felony. And so what this Court said in both of those cases was we need to look at what he actually did, not what he pled guilty of or was found guilty of. And we agree with that. We think that was rightly decided, because that is the first comment to the 7B1.1 policy statement on revocation cases. But I don't think it answers the question of an A versus a B, because an A violation doesn't just require a felony. It requires an additional fact. It requires that the conduct meet additional criteria. In Mr. Ochoa's case, that criteria is that it is a crime of violence. So I think what Schwab, Ceballos-Santacruz do is they address the first step of the inquiry that we have recommended, is that first, the Court should look to what the defendant actually did and determine what offense he committed under federal, state, or local law. And then, but then we need an additional second step to determine whether that was a crime of violence. That's what Schwab didn't answer. And so we are recommending that this Court adopt a categorical approach for several reasons. First, Your Honor, I think that the two-step approach that we have proposed here is the only way to reconcile both that first comment and the second comment, which refers the Court to look to the definition of crime of violence that is in the career offender guideline. So that provision has to have meaning. I think if the Commission only wanted the Court to look at whether the defendant acted violently, it could have used that language. It could have said conduct is a grade A violation if the defendant uses, attempts to use, or threatens to use physical force. And it didn't use that language. Instead, it used the language of crime of violence. And that has a very specific meaning in federal law, that we do it the same way in every other form. And so we think we should do it this way. And also, Your Honor, I think that this approach is consistent with the direction that this Court and the Supreme Court have developed the crime of violence case law over the years. But it's the actual conduct here, right? Sorry, did I? No, no, no. I was talking about it. Go ahead. It's the actual conduct here. And so on the — but it's the actual conduct that leads to the crime. And so we're able to say — and it doesn't have to be the crime charge, either. No, it doesn't have to be the crime charge. And so we're able to say, and I guess this is the point I'm getting to, that it could be the most serious charge of what, you know, what he could have been convicted of. And so, you know, here there's one that requires intent through an attempt, which is — it's 12 — it's 1C, causing bodily injury or substantial bodily injury to another human being while attempting to inflict bodily injury. And if we — it's divisible. We've already said it's divisible. And if that's the charge, you still lose, don't you? Because that attempt necessarily requires an intent. So a couple thoughts. First, Your Honor, absolutely I agree the government can identify the most serious form of offense. And if they prove that at the revocation hearing, if that's a crime of violence, then it's a grade A violation. I think as applied in this specific case, the government didn't prove that Mr. Otoa violated subsection 1C. Because as you noted — Your Honor noted that 1C requires the intent to inflict serious bodily injury. That is the most serious form of injury under North Dakota law. And they have — the government has to show this heightened mental state. They have to present this evidence that kind of gets the Court into Mr. Otoa's head. And I don't think that they did that, because they didn't even argue 1C at the district court. The government's argument focused on whether he had violated 1A, but they argued that he had violated 1A in an intentional manner. Didn't this involve, though, hitting somebody in the — like, basically unprovoked hitting somebody in the head, which to me would be — I mean, that's — hitting somebody in the head is going to usually inflict serious bodily injury, I would think. So serious bodily injury has a pretty heightened standard. Permanent serious disfigurement. It can include a broken bone. I think that the Court is asking a factual question that the district court didn't find. And so I think it's the of the district court to make that factual finding rather than this Court. And additionally, I'm not sure, you know, just the fistfight itself is sufficient to show that intent. You know, we don't have evidence of a weapon. They didn't isolate this victim in a dark alley. This is a fistfight in a crowded bar where he's going to get help immediately. So I think the government's evidence wasn't sufficient to show the 1C violation in this case. But if it was a 1C violation, you would concede then that it probably would be proper. But I understand you disagree with the underlying assumption. Yeah. Yes. Yes, Your Honor. So 1C doesn't involve that reckless mens rea, so I think that that would probably satisfy a crime of violence. But as I said, I think the Court shouldn't get to that question. And further, I would just note that this is harmless. Mr. Ochoa's counsel requested a time-served sentence, which would have been the guideline range for a B violation at first. And then it was only after the district court had found the guideline range that he then asked for that longer sentence. So with that, Your Honors, I would ask to reserve the remainder of my time. You may. Thank you for your argument. Mr. Shasky, we'll hear from you. May it please the Court. Good morning, counsel. I know counsel just addressed the second issue on the grade A versus grade B. I would like to start with the first issue on the confrontation matter. And I know that there's a lot of briefing done on this relative to the three exhibits that have been challenged. I kind of would like to direct the Court more to the other exhibits that were admitted without objection or very minor objections for the reason that I believe regardless of what the Court would find on the three exhibits, there's still ample evidence to show the violation in allegation number six. Maybe that's why she skipped over the issue. And that could be, Your Honor. And if the Court wishes me to skip it, I would be more than happy to skip that as well. Well, I just want to make sure you have time to address the other, but you're welcome to proceed as you wish. Your Honor, I just was going to acknowledge that exhibits five and eight in combination of each other are sufficient. They show the actual assault. They show comments by the defendant shortly afterwards on his phone, text messages that indicate he was involved with some type of altercation. And that's all I wanted to kind of address. To prove the supervised release violation wasn't necessary to prove a particular code section, right? It was just required to prove a violation of law. Right. State, federal, or local law. So that's why you didn't need the evidence on these? Yes. These A, B, C issues. Yeah. That's obviously the second prong, I guess, of this violation is do we have an A or a B violation in this particular case? And I think based on the evidence here, we do, in fact, have the grade A violation. And both of the, when we look at the case law that has come from this district or in this circuit, as far as the precedent, it's clear, it appears clear to me that this court has already decided that actual conduct is what we're going to look at in a supervised release violation setting. Obviously, if this was an original sentencing, it's a little different issue. We're going to be looking more towards the categorical approach for this particular offense, as the court did in the Schneider case. In this one, I would note, in support of the argument, I guess, that the A versus B relies on the conduct in addition to the Schwab case that Judge Benton had mentioned earlier, the Mendoza case that this court has decided even more recently. And I will specifically address Mendoza here at this point, I guess. And the reason I'm doing that is because it is the distinction between a B and an A grade violations. And in that case, the defendant had claimed, obviously, that there was sufficient evidence to show the grade B for his possessing marijuana, but not enough to get to the grade A for the intent to deliver that was required on that. And that was under guidelines, obviously, 7B1.1 and also referring back to 4B1.2. It's a similar analysis, as I see it, as our case here. In our case, we had, obviously, the different subsection of those two guideline provisions. 7B1.1A1 talks about the two, a crime of violence or a crime, controlled substance crime, and then In the Mendoza case, the actual conduct that had to be proven in addition to the offense, federal, state, local offense, carrying a prison term of more than a year, had to show manufacture, import, export, distribution, or dispensing of a controlled substance or possession with intent to do one of those. And the court looked at the actual this was a grade A because the intent to deliver had been shown by his actual conduct. It was over 70 pounds of marijuana. In our case, it's a similar situation. We have the conduct being a violation of state or local or federal law, carrying a penalty of more than a year of imprisonment. But then we have to look to that other factor of whether or not there was a use of or threatened use of or intended. I can't remember what the exact language is. I'm sorry. I'm blanking. But that extra element in there, and that's the thing. The categorical approach that's being argued by the defense requires us to look at the elements, whereas this court in Mendoza and Schwab and so on said that these supervised release violations, we look to the actual conduct. And in Mendoza, that's exactly what they did. They looked at the conduct and not the elements. I believe that if this court On this particular case, do you feel that even using the categorical approach that you've satisfied that you've proved up a grade A violation? I believe, yes, I do, as far as Subsection C? C, yes. That's what I thought was your argument. Could you elaborate on that? Your Honor, subsection C of the North Dakota Century Code, that's 12.1-1702, addresses the causing bodily injury or substantial bodily injury while intending to commit substantial bodily injury. Serious, I think is the intent. Did I get those two mixed? Okay. And in that scenario, the intent factor is there, which is similar to what we would have in the generic federal aggravated assault type charge. And what was the evidence here of the intent? She seems to be arguing there's insufficient evidence of intent. Just the fact that he hit the man in the head, is that sufficient, do you think? Well, I think the inference there, when you look at the video, and I don't know if the court has had an opportunity to actually look at it, there's all of three minutes worth of relevant time on it. And I think it's fair for the court, the district court, to have inferred what his intent was based on what he did. Because I heard the comments earlier that he came from behind and threw a haymaker. You can see him hit the side of the do that and then continue on. He had thrown six or eight additional hard punches at this individual. When you're going after somebody in an ambush type scenario where the guy doesn't even know you're coming and can't defend himself. And Exhibit 8 was not objected to, right, the video? Correct. Proceed. That's correct, Your Honor. Did the judge make a finding on this intent, or are you just saying any reasonable fact finder would have to find intent? The district court did not specifically state that. But I think based on the comments that the court did make when he, and I think he had like three different occasions during the course of that hearing where he went through exactly what was on the video that he saw, and the violence that he noted, and the unprovoked nature of it and so on. I believe that he was serious bodily injury. I don't believe that, my recollection is he didn't specifically state that factor. Your Honor, I believe that, I'm kind of getting low on time here, but I believe that in this instance, the district court did in fact look at the actual conduct as they are required to do under existing circuit precedent. I believe that this court should do the same, and that when doing so, that the facts based on the video and so on, and the inference that can be drawn from it, that the generic or 12.1-1702, the C, sub C offense was clearly committed to make this a grade A violation. And as such, I don't believe that the district court committed any type of error. If so, what I was getting at in my earliest arguments about the confrontation stuff, that it would have been harmless as it was still well within the statutory max where he was sentenced, and the defendant was quite aware of that. So I would ask that this court affirm the decision of the district court, and I thank you for your time. Thank you for your argument. We'll hear rebuttal. Thank you, Your Honor. I will resume with the government's argument regarding the Mendoza case, because I think it's simply at a different procedural posture than this case. Mendoza is a plain error case at the district court. The defendant didn't object to the finding of a grade A violation. He did argue on appeal that that was incorrect, but that case doesn't really address how this court determines whether something is an A violation or a B violation. And additionally, this court found that it wasn't plain error to find an intent to distribute marijuana when that case involves 85 pounds of marijuana in 70 separate packages. So, Your Honor, respectfully, I don't think that Mendoza resolves the question in this case. Regarding the district court's finding, I would point the court to transcripts, kind of page 61 and 62, where the government is discussing with the district court, and the district court makes its finding. And the district court's ultimate finding is that the assault is intentional, and it does make a factual finding that the assault was violent. But the district court didn't specifically find it was a violation of subsection 1c, and when it found the assault was intentional, it didn't find that the serious bodily injury was intentional. So I would respectfully submit that the government hasn't proven that 1c. And finally, Your Honors, just kind of briefly on the confrontation issues here, I think this Court's case law is pretty clear that the government has to show two things when it's not going to present evidence. It has to first show that confrontation is undesirable or impractical, and then second, it has to show that the evidence is otherwise reliable. And here, the government just simply didn't give any explanation for why it wasn't calling the victim or the bar owner or anyone who was there at the time to testify. It just called in a probation officer who, quite frankly, came into the case months after this incident occurred. Mr. Ochoa was already in custody. So, Your Honors, we do believe that the district court violated Mr. Ochoa's right to go. What about on the question of the records custodian? I mean, isn't it obvious the reason they didn't call the records custodian is that you're bothering some records custodian to come over and say, these are our records, when there's not really any dispute about it and they're obviously reliable? For the medical records, Your Honor? Yeah. Your Honor, I don't think a records custodian alone can testify that these are the medical records of the victim in this specific case and that these injuries are the result of that assault. So, Your Honor, I see that— I see. You think you need the actual doctor? Pardon, Your Honor? Do you think they have to present the doctor, not just the doctor's records? I think either the government needs to call the actual doctor or it needs to offer an explanation for why it couldn't call the doctor. And in this case, it did neither. On a business record. Well, that's what I was wondering. Oh, I'm sorry. Yeah. No, I— I think— Wouldn't they come in under the hearsay rules and confrontation exceptions? Right. What Judge Benton says. The due process considerations are going to override the hearsay exception. And I think as I answered to Judge Colitin's question, is that the records custodian still can't testify to that foundation, can't testify to how those injuries were caused or why they were caused. We need someone like the victim or witness to testify to that. Very well. Thank you for your argument. So for those reasons, we are asking the court to reverse. Thank you.